UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN HUBER,<br><br>    Petitioner,<br><br>A. DE LA CRUZ, Warden,<br><br>    Respondent. | NO. CV 24-3305-HDV (AGR)<br><br>**ORDER TO SHOW CAUSE WHY PETITION FOR WRIT OF HABEAS CORPUS SHOULD NOT BE DISMISSED** |

    Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254, challenging the state court's denial of her petition for resentencing under Cal. Penal Code § 1172.6.  On the face of the Petition, it appears that the sole ground for relief is not cognizable on federal habeas review.  The court orders Petitioner to show cause, in writing, on or before ***June 13, 2024***, why the Petition should not be dismissed.

**I.**

**PROCEDURAL HISTORY**

    A jury found Petitioner guilty of the first degree murders of Avina, Sams and Denogean as described below along with conspiracy to commit murder and other

crimes. (Petition, Dkt. No. 1 at 2.)[1] For each murder count, the jury found true robbery-murder and lying-in-wait special circumstance allegations. The jury also found true kidnapping-murder special circumstance allegations (Sams and Denogean murders) and a multiple murder special circumstance allegation (Denogean murder). Petitioner was sentenced to three concurrent terms of life in prison without the possibility of parole. *People v. Huber*, 2023 Cal. App. Unpub. LEXIS 7196, *6-*7 (Dec. 1, 2023). The California Court of Appeal affirmed the judgment with modifications. *Id.* at *7.

In 2019, Petitioner filed a petition for resentencing under Cal. Penal Code § 1170.95 (now § 1172.6). The Superior Court denied the petition without appointing counsel or holding an evidentiary hearing. The California reversed with instructions to appoint counsel and follow the procedure in § 1170.95. *People v. Huber*, 2020 Cal. App. Unpub. LEXIS 8665 (Dec. 30, 2020).

On remand, the Superior Court appointed counsel (Petitioner's former trial counsel), held an evidentiary hearing, and denied the petition. The court admitting the court file, which included the trial transcripts. On December 1, 2023, the California Court of Appeal affirmed. *People v. Huber*, 2023 Cal. App. Unpub. LEXIS 7196, *8-*14 (Dec. 1, 2023). The California Supreme Court denied a petition for review. *People v. Huber*, 2024 Cal. LEXIS 630 (Feb. 14, 2014).

Petitioner filed a Petition for Writ of Habeas Corpus in this court on April 17, 2024. (Petition, Dkt. No. 1.)

## II.
## STATE COURT DECISION

### A.   Statement of Facts

The California Court of Appeal set forth the following facts on appeal from

---

[1] Because the Petition is not consecutively paginated, the court cites the page numbers assigned by CM/ECF in the header of the document.

denial of resentencing.  *Huber*, 2023 Cal. App. Unpub. LEXIS 7196, at *2-*6.

"In November 1991, in a 27-count indictment, [Petitioner], her boyfriend John Lewis (Lewis), his sister Robbin Machuca (Machuca), and her boyfriend Vincent Hubbard (Hubbard) were charged with committing a host of crimes between July 5 and August 27, 1991: murder, robbery, kidnapping for robbery, kidnapping, receiving stolen property, and conspiracy to commit the aforementioned felonies.  Defendant was specifically charged, among other things, with the murder of Jose Avina (Avina), Willie Newton Sams (Sams), and Shirley Denogean (Denogean).

      A.    *Evidence at Trial Regarding [Petitioner's] Role in the Murders of Avina, Sams, and Denogean*

      1.    *Avina's Murder*

In the summer of 1991, [Petitioner], Lewis, Machuca, and Hubbard were living together in an apartment in West Covina, California.  On the night of July 5, 1991, [Petitioner] and Lewis set out to 'go make some money.'

The plan was for [Petitioner] and Lewis to drive around in her vehicle, along with two accomplices in another vehicle, and look for a victim whose automobile was loaded with 'a lot of stuff . . . that could be sold.'  After identifying a suitable victim, the plotters would 'bump' the victim's car and force him or her to pull over to the side of the road.  As [Petitioner] later explained to the police, if the victim cooperated, he or she 'wouldn't be harmed'; if the victim did not cooperate, though, the conspirators would 'shoot him.'

When they set out that night, Lewis, as was his custom, was armed (with a sawed-off shotgun on this occasion).  After a time, the plotters spotted Avina's red truck, which looked like it was 'worth some money' and had 'some gadgets in it.'  The two-car convoy of conspirators followed Avina's truck onto and then off a freeway.  When a 'bump' to the rear of Avina's vehicle by the accomplices' vehicle failed to bring the truck to a stop, the collaborators hemmed Avina in – the

accomplices' vehicle alongside the truck and [Petitioner's] couple behind it.

Eventually, Avina pulled his truck over in a dark residential area of Monrovia. With the truck idling near a stop sign, Lewis exited [Petitioner's] and confronted Avina, telling him to get out of the truck. When Avina refused and attempted to drive away, Lewis fatally shot him in the head. The truck climbed the curb, rolled onto a lawn, and came to a stop short of a house. Once the truck stopped, Lewis pulled Avina's body from the truck 'dumped' it on the grass, and climbed into [the] truck's cab.

[Petitioner] followed Lewis (driving Avina's truck) to the home of one of the accomplices. Once there, they stripped the truck's interior of a stereo, an amplifier, a set of 'big' speakers, and a collection of compact discs. Lewis then drove the truck to Pomona, again followed by [Petitioner] in her vehicle, which is where they abandoned it.

   2.   *Sams' Murder*

On the night of August 18, 1991, Sams was robbed at gunpoint at an automatic teller machine (ATM) and then driven in his automobile to another ATM and forced to withdraw more money from his account. From the second ATM, Sams was driven to a third location, a middle school, where he was forced into a dumpster and then shot multiple times by two different guns.[FN2] Sams' automobile was found a few days later at a shopping mall with the doors open and its radio missing.

> FN2   . . . [B]efore Sams' murder, the home of [Petitioner's] father was burglarized. The burglars stole ammunition and a number of firearms from the father's gun collection, including a Ruger .357 Magnum pistol (the Ruger). Prior to the burglary, [Petitioner] had been heard to talk repeatedly about stealing firearms from her father's collection

4

– saying at one point in Lewis's presence that they should 'take the guns from my Dad's house.'

On the night of Sams' murder, [Petitioner], Lewis, and Hubbard were seen by a witness leaving 'at the same time.' Both Lewis and Hubbard later confessed to shooting Sams even though he complied with all of their demands. [Petitioner's] fingerprint was found on one of the weapons used to kill Sams: the Ruger stolen from her father's home. [Petitioner,] after initially denying any role in Sams' murder, confessed to being 'involved' and affirmed she 'went out on that one.' She also admitted that shortly after the murder she had used Sams' ATM card to withdraw $60 from his account.

*3. Denogean's Murder*

On August 27, 1991, Lewis and [Petitioner] drove to the Puente Hills Mall in [Petitioner's] vehicle to look for a robbery victim.[FN3] Lewis was armed with the stolen Ruger and had brought with him plastic ties to restrain the victim.

> FN3  Three days earlier, Lewis had driven to the same shopping mall and kidnapped Elizabeth Nisbet; after withdrawing funds from her bank account at two different ATMs, Lewis murdered her by the side of a freeway. One day later, Lewis gave Nisbet's wedding ring to [Petitioner] as an engagement ring.

As they drove through the mall's parking lot, they saw Denogean driving alone in her Mercedes. [Petitioner] parked next to Denogean's vehicle and she and Lewis watched Denogean walk into the mall and waited for her return.

When Denogean returned a short time later, Lewis forced himself inside her Mercedes and bound her hands. [Petitioner] obtained Denogean's bank card and personal identification number (PIN) and drove Lewis and Denogean in her Mercedes to several ATMs, where [Petitioner] withdrew a total of $500 from

Denogean's bank account. They then returned to the mall where [Petitioner], driving her vehicle, followed Lewis and Denogean in the Mercedes onto a freeway. On the shoulder of the freeway near an off-ramp, the two cars parked; Lewis then led Denogean down an embankment where he shot her multiple times with the Ruger.

After the shooting, [Petitioner] followed Lewis in the Mercedes to a location where they wiped the Mercedes of their fingerprints before driving to a second location where they abandoned the vehicle. Later that same day, [Petitioner] took a portion of the funds stolen from Denogean's bank account and and went shopping. Early the next morning, she went to an ATM and withdrew an additional $200 from Denogean's bank account.

Following the arrest of [Petitioner], Lewis, and Machuca on August 30, 1991, a police officer overheard and recorded some of the statements defendants made to each other while locked in holding cells. When Lewis observed that [Petitioner] had participated in the killing of three victims, [Petitioner] did not deny or otherwise contradict him. After Machuca remarked that 'at least' they had 'fun' committing their crimes, [Petitioner] said she 'would do it all over again.'"

### B. Appellate Court Decision

The California Court of Appeal affirmed denial of the petition for resentencing.

Effective January 1, 2019, Senate Bill 1437 amended the felony murder rule and the natural and probable consequences doctrine as it relates to murder "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." *People v. Lewis*, 11 Cal. 5th 952, 959 (2021).

"Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice

aforethought." *People v. Gentile*, 10 Cal. 5th 830, 848 (2020).  Under California law, murder is "the unlawful killing of a human being with malice aforethought." Cal. Penal Code § 187(a).  Malice may be express or implied.  Cal. Penal Code § 188(a).  Malice "is express when there is a manifest intent to kill (§ 188, subd. (a)(1)); it is implied if someone kills with 'no considerable provocation . . . or when the circumstances attending the killing show an abandoned and malignant heart.' (§ 188, subd. (a)(2))." *Gentile*, 10 Cal. 5th at 844.  The intent to kill may be "inferred from the defendant's acts and the circumstances of the crime." *People v. Smith*, 37 Cal. 4th 733, 741 (2005).

On a petition for resentencing, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder under California law as amended by Senate Bill 1437.  *See* Cal. Penal Code § 1172.6(d)(3).  The court considers the evidence admitted at trial that is admissible under current law, as well as any new or additional evidence offered by either side.  *Id.*

At Petitioner's resentencing hearing, the court had reviewed the trial transcripts.  Neither the prosecution nor the defense offered new or additional evidence.  *Huber*, 2023 Cal. App. Unpub. LEXIS 7196, at *1-*2, *8.

The California Court of Appeal concluded that Petitioner is ineligible for resentencing.  *Id.* at *11-*12.  "The evidence at trial amply established [Petitioner] could be convicted under current law as a direct aider and abettor for the three murders in question."  *Id.* at *8 (footnote omitted).  The evidence raised a reasonable inference that Petitioner knew of the actual killer's intent to kill and "intended to assist in achieving that unlawful end."  *Id.* at *9.  The court reasoned as follows:

> [Petitioner's] own admissions established she intended Avina to be shot if he resisted the planned robbery, which he did by first refusing to pull over and then attempting to flee when Lewis threatened him with

7

the sawed-off shotgun. [Petitioner] was present for the murder and made it possible by driving an armed Lewis to the scene. Further, after Lewis shot Avina in the head, [Petitioner] assisted with the completion of the robbery-murder by following Lewis, who was driving Avina's truck, to one location where the truck was plundered, and then to another where it was abandoned.

After the Avina murder, [Petitioner] and her partners in crime began killing (or attempting to kill) their identified robbery victims regardless of whether the victims resisted.

Sams was killed with [Petitioner's] assistance even though he had not resisted and had cooperated with his kidnappers by surrendering his PIN to them. [Petitioner] was seen in the company of Lewis and Hubbard prior to the shooting, the shooting was accomplished with at least one weapon obtained from the burglary of [Petitioner's] father's home and with [Petitioner's] fingerprint on it, [Petitioner] admitted she was "involved" with the murder and "went out on that one," and [Petitioner] used Sams' bank card to withdraw money after the murder. In view of this evidence and [Petitioner's] role in the preceding and subsequent crimes (including the robbery and attempted killing of Valdez), the trial court could reasonably infer [Petitioner] intended to kill Sams, knew of Lewis's plan to do the same, and intended to facilitate that plan.

As for victim Denogean, [Petitioner] played a

> critical role in the kidnaping-murder. She acted as a victim-spotter, ATM-thief, and get-away driver for Lewis. Denogean, like Sams, was executed despite her cooperation with her kidnappers – and she was killed with a weapon [Petitioner] helped acquire. After [Petitioner's] arrest a few days after the murder, [Petitioner] expressed no remorse over any of the killings; instead, she stated that if she had the chance she would do it all over again. The evidence concerning the Denogean crimes was accordingly sufficient to support the trial court's finding that [Petitioner] knew of Lewis's murderous intent and intended to assist in achieving that unlawful end.

*Id.* at *12-*13.

### III.
### DISCUSSION

Federal habeas corpus relief is available only when a petitioner has been convicted or sentenced in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). Relief is not available for errors in the interpretation or application of state law. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Petitioner's sole ground for relief asserts that the state court erred in finding her ineligible for resentencing. Whether a petitioner is eligible for or entitled to resentencing under Cal. Penal Code § 1172.6 (formerly § 1170.95) is an issue of state law and does not give rise to a claim cognizable on federal habeas review. *See Bowen v. Samuels*, 2024 U.S. Dist. LEXIS 53056, *2-*3 (N.D. Cal. Mar. 25, 2024) ("Whether [petitioner] is entitled to resentencing under § 1170.95 is a question of state law and is not cognizable on federal habeas review."); *Walker v.*

*Cal. Sup. Ct.*, 2022 U.S. Dist. LEXIS 191025, *4-*5 (C.D. Cal. Sept. 13, 2022) (same); *Mays v. Montgomery*, 2021 WL 2229082, at *3 (C.D. Cal. Apr. 22, 2021) (collecting cases), *accepted by* 2021 WL 2223276 (C.D. Cal. June 1, 2021); *Cole v. Sullivan*, 480 F. Supp. 3d 1089, 1097 (C.D. Cal. 2020) (collecting cases).

An error of state law alone does not state a federal due process violation. *Rivera v. Illinois*, 556 U.S. 148, 158 (2009). A habeas petitioner "may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). "[O]therwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." *Little v. Crawford*, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006).

## III.

## ORDER

Therefore, the court orders Petitioner to show cause, on or before **June 13, 2024**, why the Petition for Writ of Habeas Corpus should not be dismissed for failure to state a cognizable ground for relief. If Petitioner does not respond to this Order to Show Cause, the Petition may be dismissed.

DATED: May 13, 2024

_____
ALICIA G. ROSENBERG
United States Magistrate Judge